UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY L. EAST, JR., <br>    *Plaintiff*, <br> <br>    *vs.* <br> <br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br>    *Defendant*. | ) <br> ) <br> ) <br> )   1:09-cv-00137-JMS-WTL <br> ) <br> ) <br> ) <br> ) |

## ENTRY REVIEWING COMMISSIONER'S DECISION

Plaintiff Gary L. East, Jr., applied for disability insurance benefits and Supplemental Social Security Income benefits through the Social Security Administration (the "SSA") in December 2003. [R. 18.][1] He alleged that he has been disabled and unable to work since April 2002; however, the Commissioner determined otherwise, following a series of administrative proceedings and a hearing before an administrative law judge (an "ALJ") in July 2007. Mr. East then filed this action seeking judicial review of the Commissioner's denial of his application for benefits.[2]

---

[1] Upon the written consent of the parties, this case has been referred to the magistrate judge for all proceedings, including for the entry of judgment, as permitted under 28 U.S.C. § 636(c) and Fed. R. Civ. Pro. 73. [Dkt. 13.]

[2] While the requirements for disability insurance benefits and Supplemental Security Income differ in other respects, both programs apply the same standard of disability. *Compare* 42 U.S.C. § 416(i)(1), *with id.* at § 1382c(a)(3). Accordingly, the Court's discussion of disability applies equally to Mr. East's applications for both types of benefits.

## BACKGROUND[3]

Although Mr. East's medical records reveal other problems, Mr. East's counsel claimed at the hearing that two chief problems have rendered Mr. East, now thirty-eight, disabled. [R. 890.]

The first such problem is Mr. East's back pain, which Mr. East claims began when he fell off a ladder in 2002. [R. 504.] The back pain directly attributable to his fall, [*e.g.*, *id.*], eventually morphed into that caused by degenerative joint and disc disease, [*e.g.*, R. 276, 501]. Doctors appear to have primarily treated Mr. East's back pain with medication.

The other main problem that Mr. East complained about is his asthma. As the ALJ noted, Mr. East "has visited the emergency room or his doctor on multiple occasions because of asthma exacerbations." [R. 25.]

Following the hearing, the ALJ determined that Mr. East does in fact suffer from back pain and asthma, however, not so much as to prevent Mr. East from working, subject to certain limitations, including those related to walking, lifting, and air quality. [R. 22-23.] According to a vocational expert, whose testimony the ALJ accepted, a substantial number of jobs exist that Mr. East still has the capacity to perform, such as interviewer, receptionist, and information clerk. [R. 28.]

---

[3] Inasmuch as counsel for both parties appear frequently before the Court, the Court would like to offer both sides some helpful guidance about preparing the "statement of facts" portions of their briefs in the future. Here, Mr. East's counsel chose to limit his statement of facts—for a 900+ page record—to a single paragraph. In contrast, the Commissioner's counsel chose an information dump that spanned nine pages of largely monotonous paragraphs (typically in the form of "Plaintiff underwent ER treatment on X date because of Y"). Both approaches reflect missed opportunities to alert the Court to the "key" facts that are helpful to each side, either by entirely omitting them, as Mr. East's counsel did, or by burying them among less pertinent details that could have been easily summarized, as the Commissioner's counsel did.

Although the ALJ's opinion makes no reference to it, Mr. East testified at his hearing, on multiple occasions, that he receives Medicaid as a result of his disability. [R. 900, 903-04, 906.] Because Mr. East didn't submit his Medicaid disability determination, it's unclear from the record when he first obtained Medicaid, or for which disabling condition(s). The only written evidence confirming Mr. East's Medicaid disability status constitutes a 2006 patient registration form from Logansport Memorial Hospital. [R. 856.] That form is, however, potentially, though not definitively, contradicted by written records from 2003 indicating that Mr. East has private insurance. [*E.g.*, 790, 796, 802, 809.]

## DISCUSSION

This Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can [he] perform h[is] past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).

Here, Mr. East claims that the ALJ committed two global errors: The ALJ improperly failed to consider the effect of his Medicaid eligibility on his disability applications and misjudged his credibility. He also assigns error at Step Three because the ALJ failed to summon a medical expert to the hearing and, at Step Five, because the ALJ failed to include all his limitations in the hypothetical posed to the vocational expert.

**A. The Effect of Mr. East's Medicaid Eligibility**

When determining whether an individual qualifies as disabled, the SSA has explicitly directed ALJs to consider whether other governmental bodies (or non-governmental ones) have found the individual disabled. 20 CFR § 404.1512(b)(5). Although non-SSA disability determinations aren't binding on the ALJ, they "cannot be ignored and must be considered." SSR 06-03p. Because the ALJ's opinion makes no mention of Mr. East's Medicaid status, Mr. East argues that the ALJ erred.

The Commissioner makes two points in response, both of which the Court rejects. First, the Commissioner says that the ALJ could ignore Mr. East's Medicaid status where, as here, some evidence in the record suggests that Mr. East has private insurance rather than Medicaid—particularly given that Mr. East failed to submit into evidence the "final decision of disability from the Indiana Medicaid Program." [Dkt. 22 at 18.] But nothing in SSR 06-03p, the only authority the Commissioner cites, expressly requires the final written Medicaid decision as a precondition to consideration of Medicaid disability status. To the contrary, the SSA's broad

definition of evidence permits Mr. East to establish his Medicaid status through mere testimony. 20 C.F.R. § 404.1512(b) ("Evidence is anything that you or anyone else submits to us or that we obtain that relates to your claim."). Of course, the ALJ certainly could have considered Mr. East's unexplained failure to produce the final written Medicaid decision when deciding how to resolve the conflict in the evidence about Mr. East's Medicaid disability status. He didn't. The ALJ also should have determined whether Mr. East in fact receives Medicaid disability benefits.

The Commissioner next argues that because any Medicaid disability determination is not binding, the ALJ's failure to consider Mr. East's possible disability status constitutes harmless error. While an ALJ can legitimately conclude that an individual receiving Medicaid disability doesn't qualify for Social Security disability, *see, e.g.*, *Potts v. Astrue*, 2009 U.S. Dist. LEXIS 52769, *11 (N.D. Ind. 2009) (affirming denial of Social Security disability benefits despite Medicaid eligibility), it would be rank speculation to conclude that this ALJ would have done so here. The written opinion indicates that the ALJ placed emphasis on the fact that "no treating physician ha[d ever] expressed the opinion that the claimant is disabled." [R. 26.] If the Medicaid review panel found Mr. East disabled, the ALJ might have been more willing to credit Mr. East's testimony about the nature and extent of his limitations. Accordingly, the Court cannot classify the ALJ's failure to determine Mr. East's disability status as harmless error.

A remand is required to remedy the ALJ's error of impermissibly ignoring Mr. East's possible Medicaid disability status.

### B.  The ALJ's Assessment of Mr. East's Credibility

Mr. East also objects that the ALJ unfairly attacked his credibility about the extent of his pain when the ALJ wrote that "much evidence in the record indicat[es] that he exaggerates his symptoms and abuses narcotic medication….On at least two such occasions, he was expressly

described as 'drug seeking.'" [R. 25.] Mr. East complains that the ALJ failed to note instances in the record where Mr. East declined narcotic drugs, [R. 293, 479], behavior that he contends is inconsistent with drug-seeking behavior.  Nonetheless, given the narrow standard of review and the lengthy list of citations that the ALJ provided, the Court cannot say that the ALJ erred in concluding that Mr. East's hearing testimony exaggerated the extent of his pain.[4]

### C. The Need for a Medical Expert to Testify Regarding Step Three

At Step Three, the ALJ must consider whether a disability applicant has one or more conditions that the Social Security Administration considers conclusively disabling.  Those conditions, so-called "Listed Impairments," are set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Even if a claimant's symptoms don't technically meet all the requirements of a Listed Impairment, the ALJ can still find the claimant conclusively disabled if the claimant's symptoms are "at least equal in severity and duration" to a Listed Impairment, in which case the claimant is said to have "equaled" a Listed Impairment.  20 C.F.R. § 416.926(a). Deciding whether a claimant has come close enough to a Listed Impairment to equal it "is strictly a medical determination."  *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) (citations omitted).

Mr. East argues that substantial evidence cannot support the ALJ's decision that his symptoms don't at least equal Listed Impairments 1.04 (for disorders of the spine) and 3.03 (for asthma) because that decision doesn't rest upon an opinion from any medical expert.

Unlike in other cases where the Commissioner successfully argues that a pre-hearing opinion from a state reviewing physician about the lack of medical equivalence obviates the need for a medical expert to testify at the hearing, *see, e.g.*, *Scott v. Sullivan*, 898 F.2d 519, 524 (7th

---

[4] Depending on whether the ALJ determines on remand that Mr. East in fact receives Medicaid disability benefits, the ALJ may need to revisit his conclusion that Mr. East exaggerates the extent of his pain.

Cir. 1990), the Commissioner argues here only that the ALJ could decide for himself the question of medical equivalence, without resort to the opinion of any licensed physician.[5] Because that argument conflicts with SSA regulations and policy to the contrary, however, the Court rejects it.  *See Wadsworth v. Astrue*, 2008 U.S. Dist. LEXIS 55923, *20 (S.D. Ind. 2008) ("The regulations discussing medical equivalence require the ALJ to consider the opinion of one or more medical or psychological consultants designated by the Commissioner when determining whether an impairment medically equals a listing." (citations omitted)) (Hamilton, C.J.).  The failure to obtain an opinion from a licensed physician about medical equivalence, either at the hearing or before, constitutes reversible error at Step Three.

### D.  The ALJ's Hypothetical to the Vocational Expert at Step Five

Although the ALJ's written opinion acknowledges that Mr. East "stated that some of his medication sedated him to the degree that he did not drive," [R. 25], the ALJ failed to include any limitations from Mr. East's medicines in the hypothetical to the vocational expert at the hearing.  The ALJ's hypothetical also failed to include other medication side effects that Mr. East says can be found in his medical record, including jitteriness, nausea, vomiting, and dizziness.  [Dkt. 19 at 13.]  Mr. East considers those failures error; the ALJ's hypothetical to the vocational expert "ordinarily must include **all** limitations supported by medical evidence in the record."  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original) (collecting cases).  *See also* 20 C.F.R. § 404.1523 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or

---

[5] Although two "Disability Determination and Transmittal" forms appear in the record, [R. 34-35], the Commissioner doesn't argue that those forms indicate that the physicians who completed the forms considered but rejected medical equivalence.  Consistent with the principle of party presentation, and particularly because neither form mentions asthma, the Court hasn't considered their effect vis-à-vis Step Three.

impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

The Commissioner argues that the ALJ appropriately omitted any limitations attributable to Mr. East's medications because the ALJ found that Mr. East doesn't suffer any side effects.

Regarding Mr. East's claims of drowsiness from the medication, the Court agrees with Mr. East that the ALJ erred, albeit not in the way that Mr. East thinks the ALJ erred. The ALJ obviously rejected Mr. East's suggestion that his drowsiness, when added to his other impairments, further limits his ability to work, so the ALJ was not required to include that limitation in the hypothetical. Nonetheless, the ALJ's opinion failed to explain **why** the ALJ rejected the limitation. The Commissioner asks the Court to speculate that the ALJ decided that Mr. East never suffers the drowsiness that he claims to suffer, when the ALJ could have equally decided that Mr. East only suffers that drowsiness when he abuses his prescriptions. But the Court cannot, and will not, so speculate; the ALJ must set forth his findings before the Court can determine whether the record supports them. *See Williams v. Bowen*, 664 F. Supp. 1200, 1207 (N.D. Ill. 1987) ("No court should be forced to engage in speculation as to the reasons for an ALJ's decision. If the decision on its face does not adequately explain how a conclusion was reached, that alone is grounds for a remand." (citations omitted)).

Insofar as Mr. East claims the ALJ improperly omitted other side effects, however, the Court rejects any claim of error. In response to questioning from his counsel at the hearing before the ALJ, Mr. East specifically denied any side effects beyond drowsiness:

> **Q** You mentioned that your medication makes you—makes your reaction-time less, when you were talking about driving.
> 
> **A** Um-hum.
> 
> **Q** Do you have any other effects from your medication?

  A  No, just, just that.

[R. 905.] The ALJ was entitled to rely upon Mr. East's sworn disavowal of other medication side effects and need not have included them in the hypothetical to the vocational expert.

Thus, on remand, the ALJ must specify his reasons for rejecting Mr. East's claims of medication-induced drowsiness. But the ALJ need not revisit other claimed side effects because substantial evidence exists for the ALJ's conclusion that Mr. East doesn't actually suffer them.

## CONCLUSION

Despite the limited nature of the applicable standard of review, the Court finds that the ALJ erred in his treatment of Mr. East's applications for benefits. Accordingly, the Court **VACATES** the decision denying benefits and **REMANDS** this matter back to the SSA for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will be entered accordingly.

02/19/2010

*[signature]*

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF only:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
tom.kieper@usdoj.gov